# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARRIE C. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-08-259-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 19, 1968, and was 39 years old at the time of the administrative hearing. She has a GED and no past relevant work. The claimant alleges she has been unable to work since May 11, 2005, because of asthma, hepatitis C, and mental impairments.

## Procedural History

On June 6, 2005, the claimant protectively filed an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. The application was denied. ALJ Lantz McClain conducted a hearing and found that the claimant was not disabled on February 29, 2008. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, that she could lift and/or carry ten pounds; stand and/or walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday. The claimant was also to avoid exposure to dust or fumes (Tr. 18). The ALJ concluded that the claimant was not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, addresser/cutter, food order taker, and assembler (Tr. 21).

**Review**

The claimant contends that the ALJ erred: (i) by failing to find her mental impairments were severe; (ii) by improperly discounting medical opinions regarding her mental impairments; (iii) by improperly analyzing her credibility; (iv) by ignoring the evidence of disability; and, (v) by posing hypothetical questions to the vocational expert that did not contain all of her limitations. The Court finds the claimant's first and second contentions persuasive, *i. e.*, that the ALJ *did* fail to properly consider the claimant's mental impairments.

The record reveals that the claimant was assessed with depression as early as June 2002 when she was incarcerated by the Oklahoma Department of Corrections (Tr. 128). She was taking Prozac by September 2002 (Tr. 109, 118-19) and was reportedly feeling better by February 2003 (Tr. 125-26). However, it was noted in August 2004 that the claimant was not taking any psychotropic medications (Tr. 123). The claimant underwent a mental status examination with Denise LaGrand, Ph.D., in July 2005. The claimant reportedly was experiencing "depression, anxiety, yelling at children, panic attacks, wanting to be alone, feeling overwhelmed, difficulty dealing with stress, short attention span, poor concentration, low to non-existent sex drive, anger, cussing like a sailor, low tolerance of people and Hepatitis C." Upon examination, Dr. LaGrand found the claimant's thoughts were organized, logical, and goal-directed, but her memory skills were below average. Her thought control appeared normal, but she reported that her mood was tired and she typically felt angry, anxious and like she was "walking on pins and needles." She reported symptoms of depression which included low energy, irritability and depressed mood most days. She

exhibited some difficulty when performing the recall/recent memory tests and her knowledge of the world was estimated to be low average. The claimant had problems performing simple calculations and eventually became frustrated. Dr. LaGrand estimated the claimant's IQ to be in the low average range (80-89). The claimant reported problems getting along with others but her ability to deal with the public was judged as fair. She did not exhibit any problems with persistence and pace and her concentration appeared adequate, but her ability to understand, remember and carry out instructions was low average. Dr. LaGrand assessed the claimant with polysubstance abuse in remission, moderate major depression, personality disorder (borderline anti-social and avoidant traits), occupational problems, and a Global Assessment of Functioning ("GAF") score of 55 (Tr. 135-41). She completed a mental medical source statement for the claimant in April 2006 and rated her ability to perform as "good" or "fair" in several areas, but she determined the claimant's ability to perform was "poor" with regard to her ability to work with or near others without being distracted by them, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers and peers, and maintaining socially appropriate behavior, *i.e.*, the claimant had "no useful ability to function." (Tr. 164-65).

The claimant began seeing Dr. B. Don Schumpert, D.O., in October 2005. In March 2006, Dr. Schumpert noted the claimant was suffering from extreme anxiousness and nervousness. He assessed the claimant with malaise, anxiety, asthma and allergy issues (Tr. 182-83). The claimant was suffering with depression in April 2006 and prescribed Fluoxetine (Tr. 180-81). By May 2006, the claimant was reportedly doing better with medication, but she still reported anxiety episodes (Tr. 178). In September 2006, Dr.

Schumpert completed a form indicating the claimant's symptoms were severe enough to interfere with her attention and concentration and her ability to tolerate work stress. He indicated she would need to take unscheduled breaks during the workday and she would likely be absent more than four days per month. He did not foresee the claimant's condition improving (Tr. 171). When he saw the claimant in December 2006, he noted her anxiety level was heightened because of a stressful situation in her marriage (Tr. 206). The claimant saw Dr. Schumpert on three more occasions through November 2007 and continued to be treated for anxiety and depression among other ailments (Tr. 205, 227-28).

The claimant saw psychiatrist Dr. Kenneth Foster, M.D., on two occasions, once in October 2005 and again in April 2006. He conducted a mental status examination of the claimant and noted she had decreased memory and concentration and restricted affect. He noted the claimant was seriously mentally ill, assigned her a GAF score of 37, prescribed medication, and recommended the claimant participate in individual and group therapy (Tr. 168-70). He completed a mental medical source statement for the claimant in April 2006. He determined her ability to perform was "poor" with regard to understanding and remembering short simple instructions; understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods of time; performing activities within a schedule, maintaining regular attendance, and being punctual; sustaining an ordinary routine without special supervision; completing a normal workday or workweek; performing at a consistent pace; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers and peers; and being aware of normal hazards and taking appropriate precautions. He indicated that the

claimant's diagnoses of post traumatic stress disorder (chronic), schizoaffective disorder (bipolar type), and panic disorder all supported his assessment. He also determined the claimant could not manage her own funds (Tr. 166-67).

State agency psychiatrist Sally Varghese, M.D., reviewed the claimant's records in January 2006 and completed a Psychiatric Review Technique ("PRT") form evaluating the claimant for affective disorders and substance addiction disorders. She concluded that the claimant suffered a mild restriction in maintaining concentration, persistence or pace, moderate restrictions in activities of daily living and in maintaining social functioning, and no episodes of decompensation (Tr. 150-63). She also opined in a mental RFC assessment that the claimant was moderately limited in her ability to understand, remember and carry out detailed instructions and in her ability to interact appropriately with the public. In conclusion, Dr. Varghese found that the claimant could perform simple tasks and some complex ones without significant interaction with the public. The claimant could interact appropriately with co-workers and supervisors (Tr. 146-49).

The ALJ determined that the claimant had severe impairments of asthma and Hepatitis C, but he concluded that the claimant's depression and anxiety were non-severe impairments that resulted in only minimal work-related limitations. With regard to her mental impairments, the ALJ noted that the claimant "ha[d] rarely sought or received treatment for depression or anxiety from a mental health professional [but] ha[d] received medication from a family practitioner." The ALJ also analyzed the claimant's mental impairments in accordance with the special technique outlined in 20 C.F.R. § 416.920a and determined that the claimant was only mildly limited in her activities of daily living, social functioning, and

concentration, persistence or pace and that she suffered no episodes of decompensation (Tr. 16-17). *See Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § [416.920a] and the Listing of Impairments and document the procedure accordingly."), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). Based on this assessment, the ALJ did not include any mental limitations in the RFC determination. However, his analysis of the claimant's mental impairments was flawed for several reasons.

First, it was error for the ALJ to reject the claimant's mental impairments as severe because she was never treated by a mental health professional. *See*, *e. g.*, *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 739 (10th Cir. 2007) ("[W]e have found no case authority requiring [a claimant] to obtain medical treatment from [a specialist in the mental health profession] before an ALJ can find that she has a severe mental impairment.") [unpublished opinion]. Although the claimant received most of her mental health treatment from her general practitioner Dr. Schumpert, she was examined on two occasions by Dr. Foster, a psychiatrist, and he also prescribed her medication (Tr. 168-70, 237).

Second, the ALJ did not properly analyze the opinions from Dr. LaGrand and Dr. Foster. He discussed the requirements for giving a medical opinion controlling weight, *see*, *e. g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (noting that a medical opinion from a treating physician is entitled to controlling weight if "'the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and]

-8-

consistent with other substantial evidence in the record.'"), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), and the factors to consider when deciding what lesser weight to assign to a medical opinion. *Id.* ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using *all* of the factors provided in [§] [416.927].'") [emphasis added], *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ noted the opinions by Dr. LaGrand and Dr. Foster were not entitled to controlling weight "because neither doctor ha[d] established [a] longitudinal treatment relationship with the claimant, having only seen her on one or two occasions." (Tr. 17). Thus, with the exception of the first factor, the ALJ failed to consider any of the other factors. Further, when the ALJ decided to reject the opinions entirely, he failed to "make clear to any subsequent reviewers the weight [given]

to the . . . medical opinion[s] and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted].[2]

Third, the ALJ failed to properly analyze the opinion from the claimant's treating physician Dr. Schumpert. He discussed the requirements for giving the opinion controlling weight and the factors (discussed above) to apply when determining what other weight to assign to a medical opinion. He then determined Dr. Schumpert's opinion was not entitled to controlling weight because he was not a mental health professional and because his opinion was "in conflict with [his] own treatment records and inconsistent with the other substantial evidence as noted above." (Tr. 20). However, as previously discussed, the fact that the claimant received mental health treatment from Dr. Schumpert, a general practitioner, does not mean her mental impairments are nonsevere. *See Fleetwood*, 211 Fed. Appx. at 739 ("[W]e have found no case authority requiring [a claimant] to obtain medical treatment from [a specialist in the mental health profession] before an ALJ can find that she has a severe mental impairment."). Further, the ALJ failed to support his conclusion that Dr. Schumpert's opinion was inconsistent with the other evidence in the record. "'Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence[,]'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007), *quoting Knight v.*

---

[2] Although not raised by the claimant, the ALJ also failed to discuss the GAF score of 55 assigned by Dr. LaGrand and the GAF score of 37 assigned by Dr. Foster. The ALJ should have considered these scores when deciding whether the claimant's mental impairments were severe. *See, e. g., Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) ("A GAF score of fifty or less. . . does suggest an inability to keep a job.") [unpublished opinion], *citing Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion]. *See also Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) ("[T]he ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion].

*Chater*, 55 F.3d 309, 314 (7th Cir. 1995), but in order to discount the evidence, the ALJ must specify and explain what the inconsistencies in the evidence are. *See*, *e. g.*, *Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.") [quotation marks and citations omitted] [unpublished opinion]; *Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. Here, the ALJ failed to do this.

Finally, the ALJ failed to analyze (or even mention) the findings of the agency psychiatrist on the PRT form and on the mental RFC assessment, *i. e.*, that the claimant had a mild degree of limitation in maintaining concentration, persistence or pace and a moderate degree of limitation in restriction of daily activities and maintaining social functioning which resulted in the claimant being capable of performing simple and some complex tasks without significant contact with the public but with appropriate interaction with co-workers and supervisors. *See*, *e. g.*, *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.") [emphasis added]. *See also* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *4 ("[T]he [ALJ] . . . must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and

psychologists. . . . RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s).").

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairments. On remand, if the ALJ concludes that the claimant does have a severe mental impairment, he should determine the claimant's functional limitations, include them in an appropriate RFC, and then determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 11th day of September, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**